WILLIAM HORSEY,

*vs.*

BENJAMIN STOCKLEY, AND JOHN O. HORSEY.

———

JOHN O. HORSEY,

*vs.*

BENJAMIN STOCKLEY.

*Sussex, Sept. T.* 1861.

B. S. held an indemnity against his indorsement of two notes of J. O. H. The notes were paid in part by money loaned to J. O. H. by W. B. H. at the request of B. S. and on his guaranty of re-payment by J. O. H. W. B. H. took for the loan the due bill of J. O. H. payable in ten days. There was no agreement by J. O. H. that the indemnity held by B. S against his indorsements should stand as a security for the loan by W. B. H. *Held,* upon the failure of J. O. H. that W. B. H. was not entitled in equity to the benefit of the indemnity to B. S. *Held, also,* that B. S. while liable under his guaranty to W. B. H. was protected by the indemnity, it being given in terms against "any loss, injury or damage that might accrue to him, on account or by reason of his indorsement."

In the particular case, B. S. having been discharged from liability under the guaranty, and the notes indorsed by him being paid, proceedings to enforce the indemnity were enjoined.

These cases grew out of the same state of facts and were heard together. The circumstances were as follows. Benjamin Stockley, having indorsed two promissory notes, of $1000 each, for John O. Horsey, took from him a judgment note for $1500, as a security or indemnity against " any loss

or damage that might accrue to him on account or by reason of said indorsement" of the notes, both of which were then unpaid.   Both the notes were afterward paid by John O. Horsey, as he alleges by his answer in the one case and his bill in the other, *out of his own funds* ; but the bill of William B. Horsey in the first case, and the answers of Stockley in both cases, allege that of the money applied to the notes the sum of $650 was paid with money *which Stockley advanced through William B. Horsey* as a loan to John O. Horsey.   William B. Horsey did in fact loan the money ($650) to John, and took his due bill for it, payable to himself in ten days.   He alleges in his bill that it was lent with the understanding of all parties that it was to be applied to one of the $1000 notes for which Stockley was then liable as indorser and was indemnified.   He further alleges that in a settlement with Stockley he had charged himself with the $650; and he claims by this bill the benefit of a judgment which had been entered on the indemnity note to Stockley, as an equity belonging to him, to enable him to secure the re-payment of the money by John O. Horsey. On the other hand, John O. Horsey, by his answer in the one case and his bill in the other, alleges that he borrowed the $650 of William B. Horsey on the security of his own due bill, without any agency or responsibility of Stockley ; and by his bill he prays an injunction against an execution issued upon Stockley's judgment on the indemnity note.

A considerable body of testimony was taken, on both sides, touching the circumstances under which the $650 was loaned to John O. Horsey and Benjamin Stockley's connection with it.   The material facts proved are stated in the opinion of the Chancellor.

The two cases came before the Chancellor, at the Sept. T. 1861, for hearing upon the bills, answers, exhibits and depositions.

*C. S. Layton*, for Wm. B. Horsey.

The $650 was advanced to John O. Horsey expressly to take up the $1000 note, which was protected by the indemnity to Stockley. It was done at Stockley's request and with the knowledge and consent of John O. Horsey. William B. Horsey is, therefore, in equity, entitled to the protection of the indemnity held by Stockley against a liability from which, at his request, he has been relieved by William B. Horsey's loan.

*J. Moore* and *W. Saulsbury*, for John O. Horsey.

The proof is that William B. Horsey loaned the $650 to John O. Horsey on the security of John's due bill, Stockley guaranteeing the re-payment of the money. But, there was no agreement by John that the indemnity note should stand open as a security for this loan; and, without such agreement, the indemnity note was discharged by the payment of the two indorsed notes for $1000 against which only the indemnity was given. It matters not with what money the indorsed notes were paid.

HARRINGTON, CHANCELLOR.—These cases, which have been heard together, are so blended as necessarily to run into each other in the consideration of them. It appears that Benjamin Stockley, having indorsed two notes, of $1000 each, for John O. Horsey, took from him a judgment note for $1500, the amount of his liability, as a security or indemnity against " any loss, injury or damage that might accrue to him on account or by reason of the indorsement of said notes," both of which were then unpaid. Both the notes were afterward paid by John O. Horsey, as he alleges, out of his own funds, the last one soon after it was protested; but the answer of Stockley, and also the bill of William B. Horsey, alleges that $650 of it was paid with money which Stockley advanced through William B. Horsey, on a loan to John. To secure this payment Stock-

ley entered judgment on the indemnity note and issued an execution for $650. John O. Horsey's bill is filed for an injunction against this execution. William B. Horsey, at the time the $650 was advanced to John, took his due bill for it, payable to himself in ten days; and, as he alleges, it was lent, with the knowledge of all parties, to pay the $1000 note for which Stockley was bound as indorser, and against which he was indemnified as aforesaid. William B. Horsey claims the benefit of this indemnity,as an equity belonging to him, to secure its re-payment by John O. Horsey, he having charged himself with it in a settlement with Stockley. He files his bill for that purpose.

John O. Horsey in his answer to William's bill says that that he borrowed this sum ($650) of William on the security of his own due bill, without any responsibility or agency of Stockley; and he asserts that William demanded the money from him more than two weeks after the due bill is now said to have been transferred to Stockley.

Looking beyond these bills and answers, the testimony of Nathaniel Horsey is, that all three of these parties told him the note was paid with money borrowed by John of William B. Horsey on a due bill. Benjamin Stockley, who was examined as a witness in the case of William B. Horsey vs. John O. Horsey, deposes that after the note was protested he prevailed on William to offer the money ($650) on loan to John, in order to pay off the note, he becoming responsible for its re-payment, and that he has re-paid it to William. He further states, that in a settlement made between them on the 8th of August 1859 this sum of $650 was included as a charge against William B. Horsey, and has since been fully settled by him. Alfred P. Robinson, Esq., confirms this. The account shows the same thing, having an entry as a debit against William B. Horsey in these words; " amount of my liabilities on transfer of John O. Horsey's due bill, dated 8th of April 1859,

and payable April 18th 1859,for $650." Nathaniel Horsey also says that William B. Horsey told him that he had loaned the money to John on a due bill, which had not been paid but was included in the settlement with Stockley and paid to him by Horsey. All this would be inexplicable but for the fact of John O. Horsey's failure and Stockley's holding an indemnity under which the parties were seeking shelter.

The point of these cases is whether either, and which of them, can equitably avail himself of this security to collect the debt of John O. Horsey, and thereby secure a preference over his other creditors.

To my mind it is clear enough that a part of the $1000 note indorsed by Stockley, and against which he held an indemnity, was paid with money borrowed for that purpose of William B. Horsey on John O. Horsey's due bill; and that the money was so lent with the knowledge and at the instance of Stockley, and on his guaranty—the assent of John O. Horsey to its being thus brought under the indemnity security not being expressed. But, with or without his assent, Stockley's equity is clear to avail himself of that security so long as he remained liable for the sum thus paid on account of his indorsement; and the more so after he had paid to William B. Horsey the sum borrowed of him to take up the note, if he ever did pay it. But, I cannot perceive what equity William B. Horsey has to fall back on Stockley's indemnity for money which he lent to John on a legal security, both as to principal debtor and guarantor, if there was a guaranty. To that security he must look for his remedy; and, though the money advanced by him may have been applied so as to relieve another person who had an indemnity, this gives him no right of subrogation, which seems to be the idea on which William B. Horsey's bill is founded. Without the express agreement of John O. Horsey to that effect no such right

of substitution exists, if indeed his agreement could have that effect. Such agreement is positively denied by John O. Horsey in his answer ; and it is not proved otherwise. It is not in the case, except by inference from the bill, and a direct charge would not establish it against the denial. Nor can the equity be raised on any idea of suretyship by William B. Horsey for Stockley, since there is no proof, in either of the cases, to establish such a claim. The money was lent by William B. Horsey to John O. Horsey, either wholly on the security of the due bill, in which case there could be no resort by any one to the indemnity, or it was lent to Horsey at the instance of Stockley, upon his guaranty, which would give him a resort to the indemnity in case of loss or liability; and viewing the transaction in this light there was no propriety in assigning the due bill to Stockley by indorsement, which it is alleged was done the day after it was taken, though there is evidence that William B. Horsey held it some time after it was due.

Just in that position I think Benjamin Stockley was entitled to resort to his indemnity, to secure him from loss or damage arising, not directly on the indorsed note but resulting from his indorsement. It was sufficiently covered by the original terms of the indemnity, which was against " any loss, injury or damage that might accrue to him on account or by reason of his indorsements."

But the case shows that this idea was not carried out. The due bill, with the indorsed assignment to Stockley, was still held by William B. Horsey two or three weeks after its date and after Stockley's execution was issued. This is proved by Nathaniel Horsey; and it is proved with equal clearness by him and by Mr. Robinson, and also by a copy of the settlement made between Stockley and William B. Horsey, that the latter was charged with the $650—(on what principle I cannot comprehend) and that he paid it on the judgment and execution which

were the result of that settlement. So that if Benjamin Stockley was at any time responsible to William B. Horsey for this sum, or had through that responsibility an equitable claim, as I think he had, to be indemnified under the collateral security, no such claim now exists, since he has been discharged from liability, and even seems to have been paid the full amount by the man to whom he was responsible. He, therefore, has no claim, legal or equitable, against John O. Horsey; and, though William is still left unpaid by John, he never had any other than a legal security for such payment, which he still possesses, viz: the due bill on which the money was lent. Certainly, the character of his claim cannot be changed so as to give him an equity under Stockley's indemnity bond by his merely charging the due bill against himself in a subsequent settlement with Stockley, though the effect might be to deprive Stockley of a remedy by discharging him of his liability. The money was due to William B. Horsey; and, if he had charged Stockley with it in the settlement, that would have supported the theory of an advance of the money by him to John O. Horsey on Stockley's guaranty— a theory which is well supported in the proof but is inconsistent with both the bills and answers. I, nevertheless, believe that to have been the true state of the transaction. Though stated differently in both the bills and answers it is proved in the depositions of William B. Horsey, Nathaniel Horsey and Stockley himself. Both he and Horsey state that the money was lent under Stockley's guaranty, and they add that it was paid by him. Stockley's deposition on that point is not evidence in his case; and the statement in William B. Horsey's deposition is incidental, if not equivocal, and made as the foundation of his own claim of substitution. The time and manner of payment are not stated, and the contrary may be inferred from the evidence of Nathaniel Horsey. But, admitting it to be true, the evidence is conclusive that Stockley col-

lected it back from William B. Horsey, and has suffered no loss to entitle him to an indemnity.

The result in the two cases, therefore, is that John O. Horsey is entitled to a perpetual injunction against Stockley's judgment on the indemnity note, Stockley having sustained no injury or loss from his indorsement of the notes; and that William B. Horsey's bill must be dismissed with costs.

Decrees accordingly.